UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO.  9:11-cv-81173-KLR

GARY DONALD CARROLL,

        Plaintiff,

v.

THESTREET.COM, INC., a Delaware
Corporation; MELISSA ANN DAVIS;
THIRD POINT LLC, a Delaware limited
liability company; THIRD POINT ADVISORS
L.L.C., a Delaware limited liability company,
and JAMES L. CARRUTHERS, JR.,

        Defendants.
_____/

## THIRD AMENDED COMPLAINT

Plaintiff, Gary Donald Carroll, sues defendants, TheStreet.com, Inc., a Delaware corporation; Melissa Ann Davis; Third Point LLC, a Delaware limited liability company; Third Point Advisors L.L.C., a Delaware limited liability company; and James L. Carruthers, Jr., and alleges:

### General Allegations

1.    This is an action for compensatory damages in excess of $75,000, exclusive of interest and costs, and punitive damages against all defendants.

2.    Plaintiff, Gary Carroll ("Plaintiff"), is a resident of Florida.

3.    Plaintiff is a private individual and not a public figure.

4.    Defendant, TheStreet.com, Inc. ("*TheStreet.com*"), is a Delaware corporation with its principal place of business in New York.

5.     *TheStreet.com* is a for-profit financial media company with a network of Internet web sites that publishes articles concerning financial markets, economic and industry trends, and investment and financial planning.

6.     Articles and information published by *TheStreet.com* reach millions of readers on a weekly basis throughout the entire United States and around the world.

7.     Defendant, Melissa Davis ("Ms. Davis"), was an investigator, reporter, journalist and/or writer for *TheStreet.com*.

8.     Ms. Davis was an employee and agent of *TheStreet.com*.

9.     At all material times, Ms. Davis was a resident of Oklahoma.

10.     Ms. Davis performed her investigative and journalistic work in connection with preparation of articles for *TheStreet.com* from her residence in Norman, Oklahoma.

11.     Defendants, Third Point LLC and Third Point Advisors L.L.C. (collectively referred to as "Third Point"), are Delaware limited liability companies with their principal places of business in New York, and offices in California.

12.     Defendant, Third Point LLC, is a registered investment advisor that manages over five billion dollars in assets.

13.     Defendant, Third Point Advisors L.L.C., is also in the financial investment business and is a related entity to Third Point LLC.

14.     At all material times, Mr. Carruthers was a member, manager, principal, executive, employee and agent of Third Point LLC and Third Point Advisors L.L.C.

15.     Mr. Carruthers committed the acts alleged in this complaint in the course and scope of his duties as an agent, employee, and representative of Third Point.

16.     From May 21, 2008 through July 3, 2008, *TheStreet.com* published an article on its Internet web sites entitled "ArthroCare Unit Keeps Troubling Company."  A copy of the article is attached as Exhibit "A" and will be referred to as the "Article."

17.     The Article, and other related articles about a publicly-traded company named ArthroCare Corporation ("ArthroCare"), were researched and written by Ms. Davis and published by *TheStreet.com*.

18.     Ms. Davis wrote and the *TheStreet.com* published (by posting on the Internet) nine articles between March 25, 2008 and October 2, 2008 concerning ArthroCare entitled and dated:  "Doctors Question Relationships in ArthroCare's Device Sales" (3/25/08), "ArthroCare Division Feeling Insurers' Heat" (5/20/08), "ArthroCare Unit Keeps Troubling Company" (5/21/08), "ArthroCare Billing Unit Draws Scrutiny" (5/22/08), "ArthroCare Unit's Revenue Razzle-Dazzle" (5/23/08), "ArthroCare's Buyout Value Looks Bloated" (5/29/08), "ArthroCare's Bungle Bashes Buyout Hope" (7/21/08), "ArthroCare Device Use Draws More Scrutiny" (8/28/08), "ArthroCare Gets No Medicare Love" (10/02/08).   These articles are attached as composite Exhibit "B" and will collectively be referred to as the "Series of Articles."

19.     At all material times, ArthroCare, among other things, manufactured and sold FDA-approved medical devices used in spine surgery.

20.     Before, during and after publication of the Series of Articles, Ms. Davis and Mr. Carruthers communicated regarding ArthroCare and Ms. Davis' investigation and research for the Article and Series of Articles.

21.     Throughout the period of preparation of the Series of Articles, Ms. Davis performed her research and writing from her home in Norman, Oklahoma.

22.     Mr. Carruthers was in California, and other states, when he communicated with Ms. Davis in Oklahoma about ArthroCare, Plaintiff, and the Series of Articles.

23.     Ms. Davis knew that Mr. Carruthers was a member, manager, principal, executive, employee, representative and/or agent of Third Point when she communicated with him about ArthroCare, Plaintiff, and the Series of Articles, and previously used him as a source of information for other articles.

24.     In 2008, prior to publication of the Article, Mr. Carruthers repeatedly represented in emails to Ms. Davis that Plaintiff was a convicted felon - convicted of insurance fraud.  Mr. Carruthers represented in the emails that Plaintiff had been indicted, convicted and sentenced.  Mr. Carruthers also represented in the emails that Plaintiff operated a business known as the "Palm Beach Lakes Surgery Center" with other convicted felons.  Attached as Exhibit "C" are copies of the emails from Mr. Carruthers to Ms. Davis, referring to Plaintiff as a convicted felon.

25.     The emails attached as Exhibit "C" were sent by Mr. Carruthers from California, and perhaps other locations, to Ms. Davis in Oklahoma.  The emails arrived and were first published on her computer(s) in Oklahoma, and first caused damage to Plaintiff in Oklahoma.

26.     Mr. Carruthers represented to Ms. Davis that ArthroCare was unscrupulously, fraudulently, unethically and illegally conducting business involving the sale and use of ArthroCare spine surgery devices with the Palm Beach Lakes Surgery Center, a business he claimed was operated by convicted felons, including Plaintiff.

27.     Mr. Carruthers advised Ms. Davis that Plaintiff was a convicted felon, in business with other felons at the Palm Beach Lakes Surgery Center, with the objective

4

that the information be published by *TheStreet.com* throughout the United States and globally.

28.     At all material times, Third Point and Mr. Carruthers were short-sellers of ArthroCare stock, positioned to tremendously profit if ArthroCare's stock price declined.

29.     At all material times, Third Point held financial positions with respect to ArthroCare's publicly-traded stock such that it would be to their monetary benefit for the stock price to decrease.  In other words, Third Point and Mr. Carruthers would profit if ArthroCare's stock price went down and, the more the price declined, the more money Third Point and Mr. Carruthers would make.

30.     Mr. Carruthers, acting as an authorized agent and representative of Third Point, conveyed the false and defamatory information about Plaintiff being an indicted and convicted felon, in business with other felons, and conducting unscrupulous, fraudulent and illegal business with ArthroCare, with the desire and intention that the information be published by Ms. Davis and *TheStreet.com* and thereby cause or influence ArthroCare's stock price to decrease over public concern that ArthroCare was engaged in illegal business with felons.

31.     Mr. Carruthers conveyed the false and defamatory information about Plaintiff being a convicted felon who consorted with other felons and conducted business with ArthroCare with the desire and intention that the information be published by Ms. Davis and *TheStreet.com* to manipulate financial markets so Third Point and Mr. Carruthers would unfairly and illegally make money.

32.     Mr. Carruthers' actions in conveying and arranging for the publication of defamatory information about Plaintiff were designed to result in publication of false and

misleading information to negatively influence ArthroCare's stock price and manipulate financial markets so Third Point and Mr. Carruthers would make money in violation of law, including laws and regulations of the U.S. Securities and Exchange Commission.

33.     Mr. Carruthers knew that if Ms. Davis and *TheStreet.com* published the false and defamatory information he provided to Ms. Davis about Plaintiff it would be published throughout the United States and globally.

34.     Mr. Carruthers intended that his statements that Plaintiff was a convicted felon be published to millions of readers around the United States and world, including readers in Oklahoma, New York, Michigan, California, and Florida.

35.     Mr. Carruthers published the false statements of fact and false innuendo about Plaintiff to *TheStreet.com* and Ms. Davis to indulge ill will, hostility, cause harm, and to financially profit by their damaging effect on Plaintiff and ArthroCare.

36.     At and prior to the time of publishing the Article, Ms. Davis, her editors, supervisors, and executives at *TheStreet.com* knew Mr. Carruthers was a member, manager, principal, executive, employee and/or agent of Third Point, a multi-billion dollar hedge fund with a short position on ArthroCare stock and financially biased, and knew information he provided was false or should have had doubts about the veracity of the information supplied by Mr. Carruthers, as his biases and motives were obvious.

37.     At all material times, Ms. Davis and *TheStreet.com* knew Mr. Carruthers and Third Point wanted them to publish negative information about Plaintiff and ArthroCare to assist in their scheme to profit by the decline in ArthroCare's stock price.

38.     The Article was published throughout the United States and globally from May 21, 2008 through July 3, 2008.

39.     The Article was on *TheStreet.com*'s web sites and available for review at any location by anyone with Internet access.

40.     The Article was intended to be and was published to millions of readers around the United States and world.

41.     The Article was accessed and reviewed by readers in Oklahoma, New York, California, Michigan, Florida, and other states.

42.     Plaintiff learned of the defamation upon being advised that a bank with whom he conducted business had reviewed the Article in Michigan and, based on the Article, questioned whether it should be conducting business with a felon.

43.     The Article stated, among other things, that an insurance company attorney "has singled out two convicted felons – Mark Izydore and Gary Carroll..."  It stated that "Carroll, convicted in the past of felony insurance fraud, has sold his stake in the operation [the Palm Beach Lakes Surgery Center]."

44.     The representation in the Article that Plaintiff was a convicted felon was based on and/or a publication of information provided by Mr. Carruthers to Ms. Davis.

45.     The representations that Plaintiff is a convicted felon were and are false.

46.     Mr. Carruthers obtained a background report in or before April 2008 and had actual knowledge from the report that Plaintiff had never been convicted of any felony or crime before so advising Ms. Davis and the Article being published.

47.     The statements by Mr. Carruthers to Ms. Davis that Plaintiff was a convicted felon were false and known by him to be false at the time they were made.

48.     Alternatively, Mr. Carruthers made the defamatory statements that Plaintiff was a convicted felon to Ms. Davis in reckless disregard of their truth or falsity.

49.     Alternatively, Mr. Carruthers had a duty to investigate and should have known that Plaintiff had never been convicted of a felony.

50.     Ms. Davis and *TheStreet.com* also had the background report and knew Plaintiff had never been convicted of a felony or any crime before publishing the Article.

51.     The statements by *TheStreet.com* and Ms. Davis that Plaintiff was a convicted felon were false and known by them to be false at the time they were made.

52.     Alternatively, *TheStreet.com* and Ms. Davis made the defamatory statement that Plaintiff was a convicted felon in reckless disregard of its truth or falsity.

53.     Alternatively, Ms. Davis and *TheStreet.com* had a duty to investigate and should have known that Plaintiff was not a convicted felon before publishing the Article.

54.     Additionally, the Article characterized Plaintiff as one of "several suspected con artists" and "troubling characters" in business with another convicted felon.  The implication and innuendo was that Plaintiff is a dishonest criminal – a con man who should not be trusted and with whom people should not conduct business.

55.     The Series of Articles also indicated that Plaintiff operated the Palm Beach Lakes Surgery Center while it engaged in "scams," "full-blown scams," "complete scams," "unnecessary operations" performed for "excessive charges" rather than to help patients, unneeded surgery "for litigation purposes only," "questionable surgeries performed on car-wreck victims with pending insurance settlements," "inflate[d] medical costs [to] fatten insurance settlements," and surgical procedures performed "with no evidence to show it even works."  The implication and innuendo was that Plaintiff is a convict, felon, con man, thief, crook, dishonest, bad character, and insurance defrauder, who was complicit in nefarious and reprehensible activities with other felons – that is,

scamming insurance companies by illegally and excessively charging for unneeded surgeries, on patients with lawsuits, performing procedures that are not efficacious. These characterizations were based on occurred because of the representations by Mr. Carruthers to Ms. Davis.

56.     Plaintiff was not even associated with the Palm Beach Lakes Surgery Center at any material times.  His relationship with the Center ended in 2006.

57.     The representations, implication and innuendo in the Article was intended to and did disparage Plaintiff; exposed him to hatred, ridicule, contempt, and distrust; and was intended to injure him in his business, reputation or occupation.

58.     Publication that Plaintiff is a convicted felon, convicted of felony insurance fraud, and innuendo that he is a "con artist" and "troubling character" was intended to and did expose Plaintiff to hatred, ridicule, distrust, contempt, and disgrace, and caused humiliation, hurt feelings, mental anguish, and emotional distress.  It caused injury to Plaintiff in his business, to his reputation and occupation, and damaged confidence in his integrity, character and professional competence.   The false statements by *TheStreet.com,* Ms. Davis, Third Point and Mr. Carruthers may result in loss of income and earnings capacity to Plaintiff.  All injuries and damages are continuing in nature.

59.     The statements in the Article about Plaintiff were not published in good faith, nor were their falsity due to an honest mistake of the facts, nor were there reasonable grounds for believing the statements in the Article that Plaintiff was a convicted felon were true.  Ms. Davis, *TheStreet.com,* and Mr. Carruthers knew Plaintiff had never been convicted of any felony or crime before publication of the Article.

60.     Ms. Davis and *TheStreet.com* also knew that the false information that Plaintiff was a convicted felon was from a source with great financial bias and motivation to provide false or misleading information that may damage ArthroCare. They should have doubted the veracity of Mr. Carruthers' statements and investigated before reporting that Plaintiff was a felon.

61.     On June 26, 2008, Plaintiff served *TheStreet.com* and Ms. Davis with notice that it published false and defamatory information, pursuant to section 770.01, Florida Statutes.   Accordingly, all conditions precedent to maintenance of this action against *TheStreet.com* and Ms. Davis have been complied with or occurred.

62.     *TheStreet.com* and Ms. Davis failed to publish a full and fair correction, apology or retraction in as conspicuous a place and type as the original Article.

## The Motivations and Conspiracy

63.     Mr. Carruthers conspired with Ms. Davis and *TheStreet.com* in the publication of false and defamatory information that Plaintiff is a convicted felon and the false innuendo that he was in fraudulent business with other felons and ArthroCare.

64.     Ms. Davis and *TheStreet.com* sought to publish articles about ArthroCare that were scandalous and sensational to garner investigative prestige, increase readership, and financially profit.

65.     Ms. Davis and *TheStreet.com* knew or should have known that Mr. Carruthers was financially motivated to provide false and misleading information because he and Third Point had short positions on ArthroCare stock and were postured to make millions of dollars by the decline in the stock's price and had doubt or should have had doubt about the accuracy of the information he provided.

66.     Ms. Davis conspired with Mr. Carruthers to defame Plaintiff to advance their aligned interests in harming ArthroCare by, among other things, defaming the reputations of people and businesses with whom ArthroCare conducted business.

67.     The conspiracy included an agreement that Ms. Davis and *TheStreet.com* would not disclose Mr. Carruthers or Third Point as sources for the Series of Articles.

68.     Mr. Carruthers and Third Point were not identified in the Series of Articles.

69.     In furtherance of the effort by Ms. Davis and *TheStreet.com* to publish scandalous and sensational articles, Ms. Davis also communicated with and published information from other biased, financially-motivated sources with financial adversity toward ArthroCare.

70.     At all material times, State Farm Mutual Insurance Company and other automobile insurance carriers were attempting to discredit a medical procedure known as percutaneous disc decompression ("PDD") that utilizes an ArthroCare medical device, and the doctors and facilities that performed PDD procedures.

71.     State Farm, to protect profit, maligned and criticized the PDD procedure and facilities and doctors that performed it.   State Farm targeted facilities and practitioners that treat patients in motor vehicle accidents with their Special Investigation Units ("SIU"), accusing health care providers of fraud and/or other illegality to delay, deny, and defend against making payments on legitimate claims; and to harass, intimidate and/or dissuade claimants from treating with targeted health care providers.

72.     After targeting a facility, State Farm would then, through attorneys and compulsory medical examination doctors, assert that the facility or doctor was "being investigated" and that PDD was a scam.

73.     State Farm's objective was to reduce, diminish or negate personal injury settlements and have a chilling effect on doctors performing or contemplating performing PDD.  This results in fewer personal injury accident cases being accepted by lawyers and fewer physicians and facilities willing to perform PDD, resulting in substantial savings and profit to State Farm.

74.     Third Point, Mr. Carruthers, and State Farm utilized *TheStreet.com* and Ms. Davis to publish false assertions of fact, innuendo, and conclusory allegations; the mention of which would cause damage.

75.     *TheStreet.com* and Ms. Davis, while relying on and quoting these sources, failed to determine or disclose their biases and ulterior motives.

76.     To facilitate their own objectives and those of the biased sources, *TheStreet.com* and Ms. Davis, without factual support, based on information from biased individuals and entities, asserted in the Series of Articles that the Palm Beach Lakes Surgery Center, operated by alleged felon (Plaintiff) was committing insurance fraud with unnecessary PDDs to inflate medical costs and insurance settlements.

77.     *TheStreet.com,* Ms. Davis, Third Point and Mr. Carruthers sought to suggest and succeeded in suggesting, in a national and global publication, a relationship between Plaintiff—a purportedly convicted insurance fraud felon—and the Palm Beach Lakes Surgery Center and the performance of PDDs using a device manufactured by ArthroCare.  *TheStreet.com* and Ms. Davis' claims that PDD is an insurance scam performed "for litigation purposes only," was buttressed by publication that a convicted insurance fraud felon (Plaintiff) was managing the Palm Beach Lakes Surgery Center.

78.    State Farm and other insurance company defense attorneys attached articles from the Series of Articles to motions in state court litigation involving patients treating at the Palm Beach Lakes Surgery Center, a business purportedly run by a felon (Plaintiff).   The articles were filed/republished to assert that ArthroCare was involved in corporate misconduct because reporters were alleging that its product was being used in PDD procedures being performed as part of an insurance scam.

79.    On information and belief, the libelous statements were intended to discredit the PDD procedure, the physicians performing it and the Palm Beach Lakes Surgery Center, to decrease personal injury settlements, and detrimentally affect the market price of the publicly-traded stock of ArthroCare.

### Discovery of Mr. Carruthers and Third Point as the Sources of the Defamation

80.    Plaintiff commenced this action for defamation against Ms. Davis and *TheStreet.com* in the Fifteenth Judicial Circuit Court in and for Palm Beach County, Florida on July 15, 2008 (the "State Court Action").   At that time, Plaintiff did not know how Ms. Davis and *TheStreet.com* falsely concluded that Plaintiff was a convicted felon.

81.    After commencing the State Court Action, Plaintiff requested production of all documents gathered and generated in connection with the Article.

82.    On November 17, 2008, Ms. Davis and *TheStreet.com* voluntarily produced 747 pages, including those attached as Exhibit "C" in which a source (now known to be Mr. Carruthers) repeatedly stated that Plaintiff was a convicted felon.  The source's name (Mr. Carruthers) was redacted on those pages and Ms. Davis invoked the journalist's privilege as a basis for non-disclosure of his identity.

83.     However, Ms. Davis and *TheStreet.com* failed to redact Mr. Carruthers name on two of the 747 pages produced on November 17, 2008.

84.     Motion and appellate practice occurred in the State Court Action on whether disclosure of Mr. Carruthers' name on two pages was inadvertent and whether the journalist's privilege had been waived by voluntary production of 747 pages.

85.     On June 15, 2009, the trial court in the State Court Action ruled that the journalist's privilege had been waived and that Plaintiff was entitled to unredacted documents from *TheStreet.com* and Ms. Davis.

86.     On July 1, 2009, Plaintiff placed Mr. Carruthers and Third Point on notice that they defamed Plaintiff and demanded the preservation of relevant documents.  A copy of the "Demand for Preservation of Evidence" is attached as Exhibit "D."

87.     In furtherance of the conspiracy to not disclose Mr. Carruthers or Third Point as sources for the Series of Articles, on July 6, 2009, *TheStreet.com* and Ms. Davis filed a petition for writ of certiorari to the Florida Fourth District Court of Appeal seeking review of the June 15, 2009 order in the State Court Action.

88.     On September 30, 2009, the Fourth District Court of Appeal issued TheStreet.com, Inc. v. Carroll, 20 So.3d 947 (Fla. 4th DCA 2009), finding that Mr. Carruther's name had been inadvertently produced, and remanding the case "with instructions to enter an order requiring the return of the documents identified in petitioners' motion to compel return [i.e., the documents identifying Mr. Carruthers], striking the use of the documents for any purpose and barring respondent from any further use of, reference to, or reliance on, the privileged information."

89.     Following the appellate decision in <u>TheStreet.com, Inc.</u>, Plaintiff commenced discovery in the State Court Action to identify the author of the statements in Exhibit "C," independent of and without using the inadvertently-produced documents.

90.     Following the appellate decision in <u>TheStreet.com, Inc.</u>, Mr. Carruthers and Third Point colluded and conspired with Ms. Davis and *TheStreet.com* to assert dilatory objections and delay discovery in the State Court Action, and otherwise prevent or delay Plaintiff from identifying Mr. Carruthers as the source of the defamation in Exhibit "C," independent of the documents Plaintiff was barred from using.

91.     In furtherance of the conspiracy and effort to prevent or delay Plaintiff from identifying Mr. Carruthers as the source of the defamation in Exhibit "C," independent of the inadvertently disclosed documents that Plaintiff was barred from using, Third Point even appeared in the State Court Action to oppose a Florida Commission to issue and serve a subpoena for documents to Third Point in New York.

92.     In furtherance of effort to prevent or delay Plaintiff from identifying Mr. Carruthers as the source of the defamation in Exhibit "C," Third Point even objected to the New York subpoena served upon it pursuant to the Florida Commission and, when its objections were overruled, sought certiorari to the Fourth District Court of Appeal.

93.     Ultimately, after protracted motion practice and litigation in state trial courts in both Florida and New York and the denial of Third Point and Mr. Carruthers' petition for writ of certiorari to the Fourth District Court of Appeal, all objections to the New York subpoenas were overruled and Third Point produced documents to Plaintiff on September 6, 2011.

94.     Plaintiff first discovered the identity of Mr. Carruthers as the source of the defamation in the emails attached as Exhibit "C," independent of the inadvertently-disclosed documents, on or about September 6, 2011.

95.     The affirmative acts of Mr. Carruthers, Third Point, Ms. Davis and *TheStreet.com*, singularly and in concert, were designed and operated to conceal Mr. Carruthers identity as the source of the defamation until September 6, 2011.

96.     On September 16, 2011, Plaintiff moved to amend the complaint to add Mr. Carruthers and Third Point as defendants in the State Court Action, which motion was granted.

97.     The affirmative acts of Mr. Carruthers, Third Point, Ms. Davis and *TheStreet.com*, singularly, in concert, and as part of their conspiracy to prevent or delay Plaintiff from identifying Mr. Carruthers as the source of the defamation, were the reasons why Mr. Carruthers and Third Point were not added as party-defendants for more than two years from the date of Mr. Carruthers emails attached as Exhibit "C."

98.     On October 21, 2011, Mr. Carruthers and Third Point removed this action to the United States District Court for the Southern District of Florida.

### Count I
### (Defamation Against
### *TheStreet.com* and Ms. Davis)

99.     Plaintiff realleges paragraphs 1-98.

100.   Plaintiff was defamed by *TheStreet.com* and Ms. Davis

WHEREFORE, plaintiff, Gary Carroll, demands judgment against defendants, TheStreet.com, Inc. and Melissa Davis, for compensatory damages, nominal damages, costs, and such further relief the court deems proper.

## Count II
### (Claim for Punitive Damages Against
### *TheStreet.com* and Ms. Davis)

101.    Plaintiff realleges paragraphs 1-98.

102.    The defamatory publication by Ms. Davis and *TheStreet.com* exposed Plaintiff to hatred, ridicule, or contempt or injured Plaintiff in his business, reputation, occupation, and charged that Plaintiff was a convicted felon.

103.    Punitive damages are warranted against Ms. Davis because at the time it published the statements about Plaintiff she was guilty of intentional misconduct or gross negligence and such gross negligence was a substantial cause of injury or damage to Plaintiff.

104.    Punitive damages are warranted against Ms. Davis because at the time she made the statements about Plaintiff she knew they were false or had serious doubts as to their truth, and her primary purpose in making the statements was to indulge ill will, hostility, and an intent to harm Plaintiff.

105.    Punitive damages are warranted against Ms. Davis because her primary purpose in making the statements was to indulge ill will, hostility and an intent to harm Plaintiff.

106.    Punitive damages are warranted against Ms. Davis because she acted with actual malice toward Plaintiff, knowing he was not a felon.

107.    Punitive damages are warranted against *TheStreet.com* because at the time it published the statements about Plaintiff, its managing agent knew they were false or had serious doubts as to their truth, and its primary purpose in making the statements was to indulge ill will, hostility, and an intent to harm Plaintiff.

108.   Punitive damages are warranted against *TheStreet.com* because at the time it published the statements about Plaintiff its managing agent was personally guilty of intentional misconduct or gross negligence and such gross negligence was a substantial cause of injury or damage to Plaintiff.

109.   Punitive damages are warranted against *TheStreet.com* because at the time it published the statements about Plaintiff it actively or knowingly participated in the conduct of Ms. Davis.

110.   Punitive damages are warranted against *TheStreet.com* because at the time it published the statements about Plaintiff it knowingly condoned, ratified, or consented to the conduct of Ms. Davis.

111.   Punitive damages are warranted against *TheStreet.com* because at the time it published the statements about Plaintiff it was grossly negligent and such gross negligence contributed to the damage sustained by Plaintiff.

112.   Punitive damages are warranted against *TheStreet.com* because its primary purpose in publishing the statements was to indulge ill will, hostility and an intent to harm Plaintiff.

113.   Punitive damages are warranted against *TheStreet.com* because it actively and knowingly participated in the misconduct of Ms. Davis.

114.   Punitive damages are warranted against *TheStreet.com* because it knowingly condoned, ratified or consented to the misconduct by Ms. Davis.

115.   Punitive damages are warranted against *TheStreet.com* because it was negligent or otherwise at fault in connection with the publication of the defamatory representations about Plaintiff that were written by Ms. Davis.

116.    Prior to removal of this action, the trial court in the State Court Actions determined that Plaintiff presented a sufficient record basis to assert a punitive damage claim against Ms. Davis and *TheStreet.com*, pursuant to section 768.79, Florida Statutes.

WHEREFORE, plaintiff, Gary Carroll, demands punitive damages against defendants, TheStreet.com, Inc. and Melissa Davis.

### Count III
### (Defamation Against
### Third Point and Mr. Carruthers)

117.    Plaintiff realleges paragraphs 1-98.

118.    Plaintiff was defamed by Mr. Carruthers.

119.    The actions of Mr. Carruthers in defaming Plaintiff occurred in the course and scope of his agency or employment and with the actual or constructive knowledge of Third Point.

WHEREFORE, plaintiff, Gary Carroll, demands judgment against defendants, Third Point, LLC, Third Point Advisors L.L.C., and James L. Carruthers, Jr., for compensatory damages, nominal damages, costs, and such further relief the court deems proper.

### Count IV
### (Claim for Intentional Infliction of Emotional Distress
### Against Third Point and Mr. Carruthers)

120.    Plaintiff realleges paragraphs 1-98.

121.    Mr. Carruthers intentionally misrepresented to Ms. Davis that Plaintiff was a convicted felon.

122.    Mr. Carruthers' misrepresentations were malicious.

123.   Alternatively, Mr. Carruthers' misrepresentations were such as to reasonably imply malice.

124.   Alternatively, Mr. Carruthers' misrepresentations evinced an entire want of care of attention to duty, or great indifference to the persons, property, or rights of Plaintiff such that malice is imputed.

125.   Plaintiff suffered damages, including emotional damages and suffering, as a result of Mr. Carruthers' intentional misrepresentations.

WHEREFORE, plaintiff, Gary Carroll, demands judgment against defendants, James L. Carruthers, Jr., Third Point, LLC, and Third Point Advisors L.L.C., for compensatory damages, nominal damages, costs, punitive damages, and such further relief the court deems proper.

## Count IV
### (Claim for Punitive Damages Against
### Third Point and Mr. Carruthers)

126.   Plaintiff realleges paragraphs 1-98 and 121-125.

127.   The defamatory publications and intentional misrepresentations by Mr. Carruthers exposed Plaintiff to hatred, ridicule, or contempt or injured Plaintiff in his business, reputation, occupation, and charged that Plaintiff was a convicted felon.

128.   Punitive damages are warranted against Mr. Carruthers because at the time of the false statements and intentional misrepresentations about Plaintiff he was guilty of intentional misconduct or gross negligence and such gross negligence was a substantial cause of injury or damage to Plaintiff.

129.   Punitive damages are warranted against Mr. Carruthers because at the time he made the false statements and intentional misrepresentations about Plaintiff he

knew they were false or had serious doubts as to their truth, and his primary purpose in making the statements was to indulge ill will, hostility, and an intent to harm Plaintiff.

130.   Punitive damages are warranted against Mr. Carruthers because his primary purpose in making the false statements and intentional misrepresentations was to indulge ill will, hostility and an intent to harm Plaintiff.

131.   Punitive damages are warranted against Third Point because at the time Mr. Carruthers published the false statements about Plaintiff its managing agents knew they were false or had serious doubts as to their truth, and her primary purpose in making the statements was to indulge ill will, hostility, and an intent to harm Plaintiff.

132.   Punitive damages are warranted against Third Point because at the time of publishing the false statements about Plaintiff, Mr. Carruthers, a managing agent, was personally guilty of intentional misconduct or gross negligence and such gross negligence was a substantial cause of injury or damage to Plaintiff.

133.   Punitive damages are warranted against Third Point because at the time Mr. Carruthers published the false statements about Plaintiff it actively or knowingly participated in his conduct.

134.   Punitive damages are warranted against Third Point because at the time Mr. Carruthers published the false statements about Plaintiff it knowingly condoned, ratified, or consented to the conduct of Mr. Carruthers.

135.   Punitive damages are warranted against Third Point because at the time Mr. Carruthers published the false statements about Plaintiff it was grossly negligent and such gross negligence contributed to the damage sustained by Plaintiff.

136.    Punitive damages are warranted against Mr. Carruthers and Third Point because its primary purpose in publishing the false statements was to indulge ill will, hostility and an intent to harm Plaintiff and thereby monetarily profit.

137.    Punitive damages are warranted against Third Point because it actively and knowingly participated in the misconduct of Mr. Carruthers.

138.    Punitive damages are warranted against Third Point because it knowingly condoned, ratified or consented to the misconduct by Mr. Carruthers.

139.    Punitive damages are warranted against Third Point because it was negligent or otherwise at fault in connection with the publication of the false and defamatory representations about Plaintiff that were written by Mr. Carruthers.

WHEREFORE, plaintiff, Gary Carroll, demands punitive damages against defendants, Third Point, LLC, Third Point Advisors L.L.C., and James L. Carruthers, Jr.

**Count VI**
**(Conspiracy to Commit Defamation**
**Against Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis)**

140.    Plaintiff realleges paragraphs 1-98.

141.    Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis shared the common purpose to illegally and unjustifiably engage in defamation of Plaintiff.

142.    Defendants joined together and used their power to defame Plaintiff by intentional and unjustifiable means.

143.    Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis took these actions against Plaintiff for the purpose of accomplishing the underlying tort of defamation with the desire and intention that the information be published to enhance the journalistic reputation of *TheStreet.com* and Ms. Davis and to manipulate financial

22

markets so Third Point and Mr. Carruthers would unfairly make money, and was a violation of law.

144.    The conspiracy by Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis, constituted and resulted in the defamation of Plaintiff.

145.    The conspiracy by Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis, resulted in damage to Plaintiff.

146.    Plaintiff's reputation has been injured by the unlawful actions of Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis,.

147.    As a further result of the conspiracy by Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis, Plaintiff has been damaged including mental pain and suffering.

WHEREFORE, plaintiff, Gary Carroll, demands judgment against defendants, Third Point LLC, Third Point Advisors L.L.C., James L. Carruthers, Jr., TheStreet.com, Inc., and Melissa Davis, for compensatory damages, nominal damages, punitive damages, costs, and such further relief the court deems proper.

### Count VI
**(Conspiracy to Intentionally Inflict Emotional Distress Against Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis)**

148.    Plaintiff realleges paragraphs 1-98 and 121-125.

149.    Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis shared the common purpose to illegally and unjustifiably make intentional misrepresentations about and inflict emotional distress on Plaintiff.

150.    Defendants joined together and used their power to injure Plaintiff by intentional and unjustifiable means.

151.   Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis took these actions against Plaintiff for the purpose of accomplishing the underlying tort of intentional infliction of emotional distress with the desire and intention that the information be published to enhance the journalistic reputation of *TheStreet.com* and Ms. Davis and to manipulate financial markets so Third Point and Mr. Carruthers would unfairly make money, and was a violation of law.

152.   The conspiracy by Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis constituted and resulted in the intentional infliction of emotional distress to Plaintiff.

153.   The conspiracy by Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis resulted in damage to Plaintiff.

154.   As a further result of the conspiracy by Third Point, Mr. Carruthers, *TheStreet.com* and Ms. Davis, Plaintiff has been damaged including mental pain and suffering.

WHEREFORE, plaintiff, Gary Carroll, demands judgment against defendants, Third Point LLC, Third Point Advisors L.L.C., James L. Carruthers, Jr., TheStreet.com, Inc., and Melissa Davis, for compensatory damages, nominal damages, punitive damages, costs, and such further relief the court deems proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

> JONES, FOSTER, JOHNSTON & STUBBS, P.A.
> Attorneys for Plaintiff
> 505 South Flagler Drive, 11th Floor
> West Palm Beach, FL 33401
> (561) 805-5500 [Telephone]
> (561) 805-5510 [Facsimile]
>
>
> By:____/s/Steven J. Rothman_____
> Steven J. Rothman
> srothman@jones-foster.com
> Florida Bar No. 501591
> Robert W. Wilkins
> rwilkins@jones-foster.com
> Florida Bar No. 0578721

## CERTIFICATE OF SERVICE

I hereby certify that on December 5, 2011, I electronically filed the foregoing document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Filing.

> By:_____/s/ Steven J. Rothman_____
> Steven J. Rothman

<u>Gary D. Carroll v. TheStreet.com, Inc.; Melissa Ann Davis; Third</u>
<u>Point LLC; Third Point Advisors L.L.C., and James L. Carruthers, Jr.</u>
Case No.  9:11-CV-81173-KLR

## **<u>SERVICE LIST</u>**

Stephen H. Johnson, Esquire
Lydecker Diaz
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
(305) 416-3180 [Telephone]
(305) 416-3190 [Facsimile]
shj@lydeckerlaw.com
Attorneys for Defendants, TheStreet.com
and Melissa Ann Davis

Bruce S. Rogow, Esq.
Bruce S. Rogow, P.A.
Broward Financial Centre, Suite 1930
500 E. Broward Blvd.
Fort Lauderdale, FL 33394
(954) 767-8909 [Telephone]
(954) 764-1530 [Facsimile]
brogow@rogowlaw.com

Matthew S. Dontzin, Esq.
msdontzin@dontzinfirm.com
David A. Fleissig, Esq.
dafleissig@dontzinfirm.com
Judd B. Grossman, Esq.
jgrossman@dontzinfirm.com
The Dontzin Law Firm LLP
6 East 81st Street
New York, NY 10028
(212) 717-2900 [Telephone]
(212) 717-8088 [Facsimile]

Attorneys for Defendants, Third Point LLC,
Third Point Advisors, L.L.C., and
James L. Carruthers, Jr.

P:\DOCS\24324\00004\PLD\1BX5737.DOC(mcb)