UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-81173-Civ-Ryskamp

|  |  |
|---|---|
| GARY DONALD CARROLL, | : |
|  | : |
| Plaintiff, | : |
|  | : |
| v. | : |
|  | : |
| THESTREET.COM, INC., a Delaware Corporation; | : |
| MELISSA ANN DAVIS; THIRD POINT LLC, a | : |
| Delaware limited liability company; THIRD POINT | : |
| ADVISORS L.L.C., a Delaware limited liability | : |
| company, and JAMES L. CARRUTHERS, JR., | : |
|  | : |
| Defendants. | : |
|  | : |
|  | : |

**DEFENDANTS THIRD POINT LLC, THIRD POINT ADVISORS L.L.C. AND JAMES L.
CARRUTHERS, JR.'S MOTION TO DISMISS THE THIRD AMENDED COMPLAINT
AND MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

Defendants Third Point LLC, Third Point Advisors L.L.C. (collectively, "Third Point") and James L. Carruthers, Jr. ("Carruthers") (Third Point and Carruthers, collectively, the "Third Point Defendants"), move to dismiss the Third Amended Complaint (the "TAC") under Fed. R. Civ. P. 12(b)(6) and respectfully submit this memorandum of law in support of their motion. Plaintiff Gary Donald Carroll's TAC asserts claims for defamation, intentional infliction of emotional distress, punitive damages and civil conspiracy.  The TAC should be dismissed with prejudice in its entirety because (1) Carroll's defamation claim is barred by Florida's 2-year statute of limitations; (2) his intentional-infliction-of-emotional-distress claim, which is based on the same alleged conduct as his defamation claim, is barred by Florida's "single action rule," and is inadequately pleaded in any case; and (3) his civil-conspiracy and punitive-damages claims depend on the underlying torts and thus fail for the same reasons as his defective defamation and emotional-distress claims.

## BACKGROUND

Because this case had a state court history before removal to federal court, including a reported decision, *TheStreet.Com, Inc., v. Carroll*, 20 So. 3d 947 (Fla. 4th DCA 2009), we provide some history before explaining why the Third Amended Complaint fails to state a claim for relief.

### The July 2008 Article, the Resulting Lawsuit, and The Proceedings Leading to the Third Amended Complaint.

According to the Third Amended Complaint (TAC), "[f]rom May 21, 2008 through July 3, 2008, *TheStreet.com* published an article on its Internet website entitled 'ArthroCare Unit Keeps Troubling Company,'" written by defendant Davis.  (TAC ¶ 16, Ex. A (the "Article").) The Article questioned the business practices of ArthroCare, a medical device company that developed, manufactured and marketed certain surgical products.  In particular, the Article

1

discussed "DiscoCare, ArthroCare's South Florida billing division that's suspected of supplying the devices for questionable surgeries performed on car-wreck victims covered by pending insurance settlements." (Ex. A. to TAC)

According to the Article, DiscoCare relied "for a huge chunk of business" on Palm Beach Lakes Surgery Center, a Florida-based operation founded by Plaintiff Carroll, who was described in the Article as having been "convicted in the past of felony insurance fraud." (*Id.*; *see also* TAC ¶ 43.)  On July 15, 2008, Carroll filed a defamation suit in Florida state court against TheStreet.com and Davis based on the statements in the Article, whose "implication and innuendo was that Plaintiff is a dishonest criminal — a con man who should not be trusted and with whom people should not conduct business." (*Id.* ¶ 54.)

**Davis Reveals The Identity Of Her Confidential Source.**

During discovery, Davis revealed that she had a confidential source for her Article, but declined to identify that source.  Accordingly, Plaintiff sought to obtain all materials gathered by Davis in connection with preparing the Article.  Although Davis and TheStreet.com invoked the Florida journalist's privilege, they agreed to produce those documents after first redacting the names of their sources.  However, on or about November 17, 2008, Davis inadvertently produced two documents without redacting the identity of one of her sources, James Carruthers of Third Point. (TAC ¶¶ 82-83.)  Davis and TheStreet.com immediately notified Plaintiff Carroll of the inadvertent disclosure and demanded return of those two documents.  On January 22, 2009, after Carroll refused to return the documents, Davis and TheStreet.com filed a motion in the Florida state court to compel Plaintiff to return the documents under Florida's journalist's privilege.

The trial court denied relief but the Florida appellate court reversed, ruling that the journalist's privilege protected Davis from disclosing her confidential sources.  *See*

*TheStreet.Com, Inc. v. Carroll*, 20 So.3d 947, 950 (Ct. App. Fla. 4th Dist. 2009).  (TAC ¶¶ 87-88.)  Accordingly, on March 8, 2010, pursuant to the appellate court's mandate, the Florida trial court entered a protective order (the "Protective Order") requiring Plaintiff Carroll to return the privileged documents, "striking the use of the documents for any purpose, and barring [Carroll] from any further use of, reference to, or reliance on the privileged information."  (Protective Order at 1.)

**Carroll Attempts To Identify Defendant Davis's Confidential Source.**

Faced with the appellate court's mandate barring use of the privileged documents "for any purpose," Plaintiff "commenced discovery" to identify Davis's confidential source by independent means.  (TAC ¶ 89.)  Plaintiff was aware during this time that the statute of limitations was continuing to run on any potential defamation claims against the alleged informant, as he acknowledged in his discovery submissions to the Florida trial court:

> Time is of the essence in obtaining an order requiring the disclosure of the informant's name in a procedurally useful fashion as ***the statute of limitations is expiring on Plaintiff's ability to bring an action against the informant***.  The statute of limitations in Florida, for example, is two years.  <u>See</u> § 95.11(4)(g), Florida Statutes.

(Pl. Motion To Compel Production Of Unredacted Documents (April 7, 2009) at 10 n.3 (emphasis added).)

On August 13, 2010, Carroll sought the appointment of a commissioner to serve the Subpoena on Third Point in the State of New York, seeking all communications between Davis and Third Point concerning the Article.  On December 3, 2010, Third Point filed a motion in the New York trial court to quash the Subpoena because it was issued in violation of the Protective Order prohibiting Plaintiff from using "for any purpose" the privileged documents.  On February

4, 2011, Third Point filed a motion in the Florida state court seeking to invalidate the commission also based on Plaintiff's alleged violation of the Protective Order.

Although the Florida state court denied Third Point's motion to quash, the court explicitly held that it "understands" the "suspicions and concerns" that gave rise to the motion.  (Order, dated March 29, 2011 at 3.)  On September 7, 2011, the Third Point Defendants produced to Carroll all documents responsive to the Subpoena.

**Carroll Files Untimely Defamation Claims Against The Third Point Defendants More Than Three Years After Publication of the Article.**

On September 29, 2011, more than three years after publication of the allegedly defamatory Article, Carroll filed the SAC adding as defendants the Third Point Defendants and asserting defamation claims against them.  According to the SAC, Mr. Carruthers "represented in writing to Ms. Davis" in emails (dated from March 11, 2008 to April 21, 2008) "that Plaintiff was a convicted felon, indicating that he was convicted on felony insurance fraud."  (SAC ¶ 19 & Ex. B.)  The alleged purpose of these communications, Carroll claimed, was to induce TheStreet.com to publish the Article, among other places, in Florida, where Carroll lived and worked.  (*See id.* ¶¶ 21-23, 26-29.)  Similarly, in Count IV of the SAC, Plaintiff pleaded a claim for conspiracy to commit defamation against all defendants.  (*Id.* ¶¶ 88-95.)

**Defendants Remove This Action, The Third Point Defendants Move To Dismiss, And Plaintiff Files A Third Amended Complaint Without Leave Of Court.**

On October 21, 2011, the Third Point Defendants, with the consent of all the defendants, filed a notice of removal, removing this action from state court based on this Court's diversity jurisdiction.  Plaintiff did not object to the removal petition, and Plaintiff has subsequently consented to this Court's jurisdiction.  (*See generally* TAC.)

Because it was clear from the face of the SAC that Plaintiff's defamation claims against the Third Point Defendants were time barred, on November 14, 2011, the Third Point Defendants

moved to dismiss the SAC under Fed. R. Civ. P. 12(b)(6).  Defendants Davis and TheStreet.com
also filed a motion to dismiss the SAC in its entirety.

While the defendants' dismissal motions were pending, Plaintiff amended his complaint a
third time, filing the Third Amended Complaint on December 5, 2011.  Plaintiff did not first seek
this Court's leave, as required under Fed. R. Civ. P. 15(a).[1]

The TAC is substantively identical in most respects to the SAC.  As with the SAC, the
Plaintiff claims in the TAC that "[i]n 2008, prior to publication of the Article, Mr. Carruthers
repeatedly represented in emails to Ms. Davis that Plaintiff was a convicted felon — convicted of
insurance fraud."  (TAC ¶ 24 & Ex. C.)  The alleged purpose of these communications, Carroll
claims, was to induce TheStreet.com to publish the Article, among other places, in Florida,
where Carroll lived and worked.  (*See id.* ¶¶ 2-3, 41, 61.)  In addition to the defamation claim,
Plaintiff again pleads a claim for conspiracy to commit defamation against all defendants.  (*Id.*
¶¶ 140-47.)

Plaintiff has added a claim for intentional infliction of emotional distress and a related
conspiracy claim against all the defendants.  (*Id.* ¶¶ 120-25, 148-54.)  These claims are based on
the same allegedly defamatory publication underlying the Plaintiff's defamation claims, and
Plaintiff does not allege any additional conduct by the Third Point Defendants apart from the
allegedly defamatory statements, all of which were alleged in the SAC.  (*Id.*)  Finally, Plaintiff

---

[1]     *See Whitehead v. Viacom*, 233 F. Supp. 2d 715, 719 (D. Md. 2002), *aff'd*, 63 Fed. Appx.
175 (4th Cir. 2003) (holding that plaintiff who amended complaint in state court prior to removal
must seek judicial approval before amending again at the federal level); *Armstrong v. Unc-Lear
Siegler, Inc.*, No. 98-736, 1999 WL 123512, at *3 (N.D.N.Y. March 1, 1999) (requiring *pro se*
plaintiff to obtain leave of court before amending complaint in federal court after having once
amended complaint as of right in state court prior to removal).

has added a request for punitive damages based on the defamation and emotional-distress claims. (*Id.* ¶¶ 126-39.)

## STANDARD OF REVIEW

A complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Only a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009) (citing *Twombly,* 550 U.S. at 556). Dismissal of a cause of action on statute-of-limitation grounds is appropriate if it is apparent from the face of the complaint that a claim is time barred. *See Brotherhood of Locomotive Eng'rs v. CSX Transp., Inc.*, 522 F.3d 1190, 1194 (11th Cir. 2008); *Del Fuoco v. O'Neill*, No. 09-CV-1262, 2011 WL 601645, at *2 (M.D.Fla. Feb. 11, 2011) (dismissing Florida defamation claims where "it is readily apparent from the face of the Second Amended Complaint that Plaintiff's defamation claim(s) . . . are barred by the applicable statute of limitations"); *White v. Padgett*, 475 F.2d 79, 82 (5th Cir. 1973) (upholding dismissal of time-barred complaint because "the affirmative defense clearly appears on the face of the complaint").

Although a court must accept well-pleaded facts as true, this Court is not required to accept Plaintiff's legal conclusions. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009) (citing *Iqbal*, 129 S. Ct. at 1949 (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions")). "[U]nwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005); *Iqbal*, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

**ARGUMENT**

**I.**

**PLAINTIFF'S DEFAMATION CLAIMS ARE BARRED BY
FLORIDA'S TWO-YEAR STATUTE OF LIMITATIONS**

As the Florida Supreme Court has recognized, "[t]he [Florida] legislature has established unequivocal guidelines governing the statute of limitations for defamation suits and has decided on a two-year period." *Wagner*, 629 So. 2d at 114-15 (citing Fla. Stat. § 95.11). The two-year period begins to run from the time the cause of action accrues, which for a defamation claim is the date of the first publication. *Id.* (citing Fla. Stat. §§ 95.031, 770.07). This two-year period is "applicable to all civil litigants, both public and private, in defamation actions." *Id.* at 115.

In adopting this "publication" rule, the Florida Supreme Court considered and expressly rejected an alternative "discovery rule" that would have tolled the statute of limitations until a plaintiff's discovery of the defamatory statement. *Wagner, Nugent, Johnson, Roth, Romano, Erikson & Kupfer, P.A. v. Flanagan*, 629 So. 2d 113, 114-15 (Fla. 1993) (reversing trial-court order holding "that the statute of limitations period for defamation does not begin to run until the libel or slander is discovered or reasonably should have been discovered"). In *Wagner*, the alleged defamation against plaintiff Flanagan had occurred in a private letter of which the plaintiff was unaware; consequently, plaintiff argued that this was a "private" defamation and "where the defamation is private, not public, the limitations period should run from the time of discovery, not publication. A publication rule for private defamation, he contend[ed], would be unfair because it would deprive a plaintiff of relief when he or she could not have known of the wrong." *Id.* at 114.

The Florida Supreme Court rejected plaintiff's argument and enforced the publication rule enacted by the Florida Legislature: "To rule otherwise," the court held, "would allow

potentially endless liability since Florida Statutes contain no statute of repose for this particular tort." *Id.*

Federal and state courts have adhered to the Florida Supreme Court's ruling in *Wagner* without exception—including in circumstances comparable to those here.  For example, the United States District Court for the Middle District of Florida recently dismissed a defamation claim filed more than two years after an allegedly defamatory publication had accused the plaintiffs of having committed a felony.  *See Hendricks v. Rambosk*, No. 2:10-cv-526, 2011 WL 1429646, at *7-8 (M.D. Fla. April 14, 2011).   Relying on *Wagner*, the District Court in *Hendricks* squarely rejected the plaintiffs' claim that the defendants "should be estopped from relying on a statute of limitations defense because plaintiffs did not discover" the allegedly defamatory statements "until discovery commenced in this case."  *Id.* at *7, 19.  The court held that the defamation claims were time barred "regardless of the timing of [plaintiff's] discovery of the defamation."  *Id.* at *20; *see also Yusuf Mohamad Excavation v. Ringhaver Equip. Co.*, 793 So. 2d 1127, 1127-28 (Fla. Ct. App. 5th Dist. 2001) (rejecting application of "delayed discovery doctrine" to defamation claim under Florida law).

Dismissal is likewise mandated here.  Under Florida law, the limitations period runs from the date of publication, and the controlling chronology here is set forth by Plaintiff's own complaint.  Plaintiff alleges that the Article was published on the TheStreet.com's website "from May 21, 2008 through July 3, 2008."  (TAC ¶¶ 16, 22.)  Even if, for the sake of argument, we take the *last* date of publication rather than the statutorily specified "first publication," it cannot be disputed that any claims based on statements published in the Article expired no later than July 3, 2010.  Yet Plaintiff did not file the SAC pleading defamation claims against the Third Point Defendants until September 29, 2011, some fifteen months later.  The TAC's defamation

claim (Count III) and the related conspiracy claim (Count VI) are therefore time barred.  *See Ovadia v. Bloom*, 756 So. 2d 137, 140 (Fla. Ct. App. 3d Dist. 2000) ("The conspiracy to defame claim cannot stand where, as here, the defamation action fails" because "the statute of limitations on that claim had run").  Under Florida law, it is irrelevant whether Carroll did not learn of the involvement of the Third Point Defendants until much later, because the Florida statute of limitations runs from the date of publication—not the date of Plaintiff's discovery of those involved in the publication.

Even if we could conceive of a hypothetical case warranting an exception to the Florida Supreme Court's bright-line *Wagner* rule—and no court has ever recognized one—this case would not be it.  This is not a case where, as might be true in some "private defamation" actions, the Plaintiff has no recourse unless he discovers secret defamatory statements within two years of publication.  Plaintiff Carroll has affirmatively averred that he learned of the alleged defamation in the Article when it was first published by TheStreet.com on May 21, 2008.  (TAC ¶¶ 38, 61.)  Carroll promptly sued TheStreet.com and author Davis.  Therefore, dismissal of the claims against the Third Point Defendants will not leave the Plaintiff without a cause of action for relief.  Of course, even if dismissal here did leave Carroll without any viable claim for defamation, that would provide no warrant for a federal court to rewrite a state statute of limitation, because it is the very purpose of such a law to extinguish claims when the legislature sees fit to do so.

### A.    The Doctrine Of Equitable Tolling Is Unavailable.

Any excuses for why Plaintiff did not earlier discover the identity of the Article's confidential sources are of no help in trying to revive his time-barred defamation claims.  That is because under settled Florida law, the doctrine of "equitable tolling" is "not available outside the

administrative context." *Watson v. The Paul Revere Life Ins. Co.*, No. 11-21492, 2011 U.S. Dist. LEXIS 122307, at *13 (S.D. Fl. Oct. 21, 2011); *Socas v. The Northwestern Mutual Life Ins. Co.*, No. 07-20336, 2011 U.S. Dist. LEXIS 126789, at *37 (S.D. Fl. Nov. 2, 2011) ("[I]n Florida, the application of equitable tolling is limited to administrative proceedings.").

As a general matter of federal common law, "[e]quitable tolling is a form of extraordinary relief that courts have extended 'only sparingly.'" *Ramos v. U.S. Dep't Health and Human Servcs.*, 2011 U.S. Dist. LEXIS 12168 (11th Cir. June 14, 2011) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)). Florida law is even more restrictive. In *Major League Baseball v. Morsani*, the Florida Supreme Court held that Florida Statute § 95.051(1) "delineates an exclusive list of conditions that can 'toll' the running of the statute of limitations." 790 So. 2d 1071, 1075 (Fla. 2001); *HCA Health Servs. of Fla., Inc. v. Hillman*, 906 So. 2d 1094, 1100 (Ct. App. Fla. 2d Dist. 2004) ("[I]n order for a doctrine to 'toll' the statute of limitations, it must be included in the exclusive list of conditions set forth in section 95.051(1).") (citing *id.*). Because "equitable tolling is not among" the "list of events" in § 95.051(1) "that toll a statute of limitations," the doctrine of equitable tolling "is not available in civil actions," including defamation cases like this one. *See Pierson v. Orlando Regional Healthcare Systems, Inc. No 08-cv-466 (M.D. Fla. 2010)*, 2010 U.S. Dist. LEXIS 33974, at *49 (holding inapplicable the doctrine of equitable tolling in defamation action); *see also Wiand v. Dewane*, No. 10-CV-246, 2011 U.S. Dist. LEXIS 109306, at *9 (M.D. Fl. Sept. 26, 2011) (holding inapplicable the doctrine of equitable tolling because "the legislature has made clear its intent to exclude all tolling exceptions not listed in" § 95.051(1)). "Thus, this Court is bound by the holding of the Second District Court of Appeal [of Florida] in *HCA Health* that equitable tolling does not apply

outside of administrative actions, and the doctrine is not available to Plaintiff in this case."
*Pierson*, 2010 U.S. Dist. LEXIS 33974, at *51.

### B.   There Is No Basis To Estop The Third Point Defendants From Asserting A Statute-Of-Limitations Defense.

The Court should reject Plaintiff's bare accusations of a purported "conspiracy" "to not disclose Mr. Carruthers or Third Point as sources" for the Article as a basis for estopping the Third Point Defendants from asserting a statute-of-limitations defense. (*See* TAC ¶¶ 87-97.)

"Equitable estoppel presupposes a legal shortcoming in a party's case that is directly attributable to the opposing party's misconduct." *Morsani*, 790 So. 2d at 1076-77.

> However, equitable estoppel presupposes that the plaintiff knows of the facts underlying the cause of action but delayed filing suit because of the defendant's conduct. [ ] Stated another way, equitable estoppel arises where the parties recognize the basis for suit, but the wrongdoer prevails upon the other to forego enforcing his right until the statutory time has lapsed.

*Hendricks*, 2011 U.S. Dist. LEXIS 40608, at *20-21 (citing *Ryan v. Lobo de Gonzalez*, 841 So. 2d 510, 518-19 (Ct. App. Fla. 4th Dist. 2003) (internal citations and quotations omitted)). "Thus, equitable estoppel only applies when the plaintiff recognizes the basis for suit but the defendant's conduct induces the plaintiff to forbear filing suit within the limitations period." *Id.* at *21.

In *Hendricks*, the court held that the doctrine of equitable estoppel did not apply to plaintiffs' defamation claims where the plaintiffs did not learn of the defamatory statement "until discovery commenced in this case" which was after the limitations period had expired. *Id.* at *19. The court held that "even taking all of plaintiffs' allegations as true, plaintiffs' were not aware that they had a cause of action until after the statute of limitations ran," so "they were not induced by defendants' actions to forego filing suit within the limitations period." *Id.* at *21 (citations omitted); *see also Ryan*, 841 So. 2d at 520 (affirming trial court's ruling that equitable estoppel was inapplicable because plaintiff was unaware of her cause of action prior to the

expiration of the statute of limitations, so she was "not induced to forego filing suit within the limitations period").

Similarly here, equitable estoppel is unavailable as a matter of law because, as in *Hendricks*, Plaintiff admittedly was not aware of his potential defamation claim against the Third Point Defendants until September 2011—well *after* the statute of limitations period already had run.  Moreover, it is undisputed that the Third Point Defendants first appeared in this action to challenge the Subpoena in December 2010—more than two-and-a-half years *after* the Article's initial publication and well *after* Plaintiff's claims already were time barred.  So even if the Third Point Defendants are guilty of any wrongdoing—to be sure, they are not—in no event could the Plaintiff's failure to timely file his claims be "directly attributable to the opposing party's misconduct." *Morsani*, 790 So. 2d at 1076-77.

Nor has Plaintiff alleged a single fact to support his bald misconduct claim, despite repeated accusations of some sort of "conspiracy."  Plaintiff's primary claim in this regard is that defendants, including the Third Point Defendants, "colluded and conspired" to resist Plaintiff's attempts to obtain documents that the Florida appellate court had ruled were protected by the journalist's privilege.  "In furtherance of this conspiracy," Plaintiff alleges, "*The Street.com* and Ms. Davis filed a petition for writ of certiorari to the Florida Fourth District Court of Appeal seeking review of the June 15, 2009 order in the State Court Action" holding that Ms. Davis had waived the journalist's privilege.  (TAC ¶ 87.)  Plaintiff does not allege—nor is there a basis to do so—that the Third Point Defendants had any involvement in Ms. Davis's appeal from the state court's order.   Accordingly, that conduct cannot be attributable to the Third Point Defendants.  Regardless, though, as Plaintiff concedes, *the appeal was successful*: the appellate court reversed the trial court's order and directed Plaintiff to return privileged documents and

prohibited him from using them "for any purpose." (TAC ¶ 88.) So there is no basis whatsoever for finding that the appeal could somehow constitute misconduct. *See Pierson*, *supra*, 2010 U.S. Dist. LEXIS 33974, at \*48 (rejecting equitable-estoppel argument because "Plaintiff has not identified any misconduct").

Plaintiff's claim that Third Point's motion to quash the Subpoena amounts to wrongful litigation conduct is equally meritless. Plaintiff does not even attempt to explain how moving to quash a Subpoena allegedly issued in violation of the Protective Order is improper. Indeed, the state court acknowledged that the motion was based on "reasonable suspicion" that the Subpoena was issued in violation of the Protective Order, and the court denied Plaintiff's motion for sanctions for that reason.

There simply is no basis to estop the Third Point Defendants from asserting a valid statute-of-limitations defense based on Plaintiff's bare assertions of a conspiracy that did not exist. *See Sinaltrainal*, 578 F.3d at 1268-69 (affirming district court's dismissal of conspiracy claims because they rested on "unwarranted deductions of fact," failed to "provide any factual content," were "vague and conclusory").

## II.

### PLAINTIFF'S EMOTIONAL-DISTRESS CLAIMS SHOULD BE DISMISSED

#### A.   Emotional-Distress Claims Based Solely On Defamatory Statements Are Barred By Florida's Single Action Rule.

Because Plaintiff's defamation claims are barred by the two-year statute of limitations, Plaintiff has added claims for intentional infliction of emotional distress, which generally are governed by a four-year limitations period under Florida law. *See* Fla. Stat. § 95.11(3)(o) (intentional torts). These claims, however, are precluded by Florida's "single action rule" prohibiting a plaintiff from making an end-run around a valid statute-of-limitations defense

simply by renaming the cause of action based on the same allegedly wrongful conduct.  In other words, "[a] cause of action sounding in tort is limited to the two year statute of limitations for defamation if it is premised on the defamatory remark."  *MYD Marine Distribs., Inc. v. Donovan Marine, Inc.*, No. 07-61624-CIV, 2009 U.S. Dist. LEXIS 20550, 2009 WL 701003, at *2 (S.D. Fla. Mar. 16, 2009).

Plaintiff has not pleaded a single act—let alone tortious conduct—apart from the defamatory statements.  Where, as here, the allegedly defamatory statements are the sole basis of Plaintiff's emotional-distress claim, the Plaintiff cannot circumvent the two-year limitations period simply by renaming the defamation claim.  *See Fridovich v. Fridovich*, 598 So. 2d 65, 69 (Fla. 1992) (holding that successful invocation of a defamation privilege precluded a cause of action for intentional infliction of emotional distress when the sole basis for the latter cause of action was the defamatory publication); *Pierson*, 2010 U.S. Dist. LEXIS 33974, at *75-76 (dismissing intentional-infliction-of-emotional-distress claim "because it is merely a recasting of Plaintiff's insufficiently-pleaded and time-barred defamation claims"); *see also Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Ct. App. Fla. 4th Dist. 2002) ("Thus, if the defamation count fails, the other counts based on the same publication must fail as well because the same privileges and defenses apply."); *Ovadia v. Bloom*, 756 So. 2d 137, 141 (Ct. App. Fla. 3d Dist. 2000) (affirming summary judgment in favor of defendants where the statute of limitations on the defamation claims had run because the single-action rule prohibits multiple actions to be maintained when they arise from the same publication upon which the failed defamation claim was based); *Trujillo v. Banco Central Del Ecuador*, 17 F. Supp. 2d 1334, 1339 (S.D. Fla. 1998) (holding that false-light privacy claim was barred by single action rule where it was based on the same facts giving rise to the defamation claim).

**B.      Plaintiff's Emotional-Distress Claims Are Legally Insufficient.**

Plaintiff's emotional-distress claims should be dismissed for the separate and independent reason that they are insufficiently pleaded as a matter of law.  To state a cause of action for intentional infliction of emotional distress in Florida, the Plaintiff must demonstrate that:  (1) the wrongdoer's conduct was intentional or reckless; (2) the conduct was outrageous; (3) the conduct caused emotional distress; and (4) the emotional distress was severe.  *De La Campa v. Grifols America, Inc.*, 819 So. 2d 940, 943 (Ct. App. Fla. 3d Dist. 2002).  "Outrageous" conduct is conduct that is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277, 278-79 (Fla. 1985); *see also Scheller v. American Med. Int'l, Inc.*, 502 So. 2d 1268, 1271 (Ct. App. Fla. 4th Dist. 1987).

Moreover, "some level of physical contact or severely threatening behavior" typically is required to support a claim for intentional infliction of emotional distress.  *Egwuatu v. Burlington Coat Factory Warehouse Corp.*, No. 10-cv-996, 2011 U.S. Dist. LEXIS 62575, at *12 (M.D. Fla. June 12, 2011).  "Liability . . . does not extend to mere insults, indignities, threats, or false accusations." *Williams v. Worldwide Flight Servs.*, 877 So. 2d 869, 870 (Ct. App. Fla. 3d Dist. 2004) (citing *Scheller*, 502 So. 2d at 1271); *see Callaway v. Hernandez*, No. 07-cv-132, 2010 U.S. Dist. LEXIS 28877, at *28-29 (M.D. Fla. March 25, 2010) (holding a "malicious attempt" to put plaintiff "out of business" insufficient to support emotional-distress claim); *Valdes v. GAB Robins N. Am., Inc.*, 924 So. 2d 862, 866 (Ct. App. Fla. 3d Dist. 2006) (investigating  and then making false statements to state agency leading to plaintiff's arrest was "not the type of conduct that is so outrageous in character and extreme in degree as to go beyond the bounds of decency and be deemed utterly intolerable in a civilized society"), *review denied*,

15

949 So. 2d 200 (Fla. 2007); *Food Lion, Inc. v. Clifford*, 629 So. 2d 201, 202-03 (Ct. App. Fla. 5th Dist. 1993) (false accusation of theft insufficient to support claim for intentional infliction of emotional distress).

In *Legrande v. Emmanuel*, for example, the appellate court affirmed the trial court's dismissal of emotional-distress claims where a clergyman was falsely branded a thief in front of his parishioners.  889 So. 2d 991, 995 (Ct. App. Fla. 3d Dist. 2004).  The court held that even if the allegedly false statements could give rise to a valid defamation claim, *id.* at 994, they "fail to rise to that level of extreme and outrageous conduct necessary to satisfy" the elements of a claim for intentional infliction of emotional distress:

> Although we recognize that being branded a thief in front of one's parishioners might certainly be unsettling, embarrassing, and/or humiliating for a member of the clergy, we do not believe that this alleged conduct is the type of extreme and outrageous conduct needed to support a claim for the intentional infliction of emotional distress as a matter of law.

*Id.* at 995.

And in *Williams*, the appellate court affirmed the trial court's dismissal of an intentional-infliction-of-emotional-distress claim where the plaintiff had alleged that the defendant called him a "nigger" and "monkey" to his face and in front of others, and falsely accused him of stealing.  877 So. 2d at 870.  While the court held that "the allegations reflect conduct that is reprehensible, objectionable, and offensive," the conduct "complained of did not rise to the level that may be reasonably regarded as so extreme and outrageous so as to permit [the plaintiff] to recover in an action for intentional infliction of emotional distress." *Id.* at 870.  In so holding, the court also noted that plaintiff's allegations were not "sufficient to satisfy the physical contact requirement normally associated with the outrageous conduct necessary to state a valid claim for intentional infliction of emotional distress." *Id.*

16

Here, Plaintiff's allegations of a defamatory Article fall well short of the sort of "outrageous" conduct necessary to support an emotional-distress claim. If a priest cannot maintain such a claim after being falsely and publicly accused of thievery, and an employee cannot support such a claim based on repeated invidious racial slurs and false accusations of stealing, then certainly the Plaintiff here cannot plead such a claim based on the single statement in a news publication reporting that he had been convicted of insurance fraud (a crime, which, by the way, Plaintiff nowhere denies having committed). Nor has Plaintiff made a single allegation "to satisfy the physical contact requirement normally associated with the outrageous conduct necessary to state a valid [emotional-distress] claim." *Williams*, 877 So. 2d at 870.

For these reasons, the Court should dismiss Plaintiff's claims for intentional infliction of emotional distress.

## CONCLUSION

Under settled Florida law, the two-year statute of limitations for defamation claims runs from the date of publication, without regard to the date of discovery of the defamation or the identity of the defamer. Because Plaintiff's defamation claims against the Third Point Defendants are based on allegedly defamatory statements published more than three years before the TAC was filed, those claims are time barred and must be dismissed with prejudice. Renaming the time-barred defamation claims as emotional-distress claims is futile under Florida's single action rule, and therefore Plaintiff's addition of those claims to this defamation action cannot revive the TAC. Intentional-infliction-of-emotional-distress claims based on a single allegedly defamatory statement are legally deficient in any event, so those claims should be dismissed for that reason as well. The TAC should be dismissed with prejudice.

17

Dated: January 9, 2012
    Fort Lauderdale, Florida

                                        Respectfully submitted,

                                          *S/Bruce S. Rogow*

                                          BRUCE S. ROGOW
                                          Florida Bar No. 067999
                                          brogow@rogowlaw.com
                                          BRUCE S. ROGOW, P.A.
                                          Broward Financial Centre, Suite 1930
                                          500 East Broward Boulevard
                                          Fort Lauderdale, FL  33394
                                          Telephone: (954) 767-8909
                                          Facsimile:    (954) 764-1530

                                             and

                                          MATTHEW S. DONTZIN
                                          New York Bar No. 1895200
                                          msdontzin@dontzinfirm.com
                                          DAVID A. FLEISSIG
                                          New York Bar No. 2488260
                                          dafleissig@dontzinfirm.com
                                          JUDD B. GROSSMAN
                                          New York Bar No. 4447991
                                          jgrossman@dontzinfirm.com
                                          THE DONTZIN LAW FIRM LLP
                                          6 East 81st Street
                                          New York, New York 10028
                                          Telephone: (212) 717-2900
                                          Facsimile: (212) 717-8088

                                        By:   *s/Bruce S. Rogow*
                                               BRUCE S. ROGOW

                                          *Attorneys for Third Point LLC,*
                                           *Third Point Advisors L.L.C., and*
                                           *James L. Carruthers, Jr.*

18

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 9, 2012, the foregoing document was served on the below via U.S. Mail:

Steven J. Rothman, Esquire
Jones, Foster, Johnston & Stubbs, P.A
505 South Flagler Drive, Suite 1100
West Palm Beach, FL 33401
Telephone: (561) 805-5500
Facsimile: (561) 805-5510
srothman@jones-foster.com

*Attorneys for Plaintiff*

Stephen H. Johnson, Esquire
Lydecker Diaz
1221 Brickell Avenue, 19th Floor Miami, Florida 33131
Telephone: (305) 416-3180
Facsimile: (305) 416-3190
shj@lydeckerlaw.com

*Attorneys for Defendants TheStreet.com, Inc. and Melissa Ann Davis*

*By: Bruce S. Rogow*

19